```
                    UNITED STATES BANKRUPTCY COURT
                  MIDDLE DISTRICT OF NORTH CAROLINA
                          GREENSBORO DIVISION
```

```
JULIE ANN ROUSE,                  )
                                  )
      Plaintiff,                  )
                                  )
vs.                               )
                                  )     Adversary Proceeding
JAMES T. WARD, TRUSTEE            )     No. 08-02006
FOR TERESA HALL,                  )
                                  )
      Defendant.                  )
                                  )
```

## MEMORANDUM OPINION

This adversary proceeding came before the court on October 28, 2008, for hearing on the defendant's motion for summary judgment. Anna Cotten Wright appeared on behalf of the defendant and Arlene M. Reardon appeared on behalf of the plaintiff.

### FACTUAL BACKGROUND

Richard Keith Bivins and Julie Rouse were married in 1981. They separated in May of 2005. In December of 2005, Mr. Bivins began dating Teresa Hall. Mr. Bivins and Ms. Hall began living together in February of 2006. In July of 2006, Mr. Bivins and Ms. Hall purchased a house together where they were residing at the time of Mr. Bivins' death on March 14, 2007. At the time of his death, Mr. Bivins was insured under a life insurance policy issued by Genworth Life & Annuity Insurance Company ("Policy").

Ms. Rouse was the beneficiary under the Policy as originally issued. However, in September of 2006, Genworth received a change of beneficiary form purportedly signed by Mr. Bivins that

designated Teresa Hall as the beneficiary of the Policy. Following Mr. Bivins' death, Ms. Rouse contested whether there had been a valid change of beneficiary. Genworth then filed an interpleader action in the Superior Court of Guilford County naming Julie Rouse and Teresa Hall as parties. Shortly thereafter, Teresa Hall commenced a Chapter 7 bankruptcy case in which the defendant was appointed as Chapter 7 Trustee. The defendant then intervened in the interpleader action and removed the proceeding to this court pursuant to 28 U.S.C. § 1452. Genworth subsequently was dismissed from this proceeding after depositing the proceeds of the Policy with the court, and the parties were realigned with Ms. Rouse as the sole plaintiff and the Trustee as the sole defendant.

Each of the parties asserted a claim to the Policy proceeds. Plaintiff asserts that there was no valid change of beneficiary and that as the original beneficiary, she is entitled to the proceeds of the Policy. The defendant asserts that there was a valid change of beneficiary and that the proceeds constitute property of the bankruptcy estate in the Teresa Hall case that should be paid to him as Trustee. The matter now before the court is the defendant's motion for summary judgment in which he asserts that there is no genuine issue as to any material fact and that as a matter of law he is entitled to a judgment awarding the proceeds of the Policy to him. The issue before the court thus is whether the defendant is entitled to summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2546, 2548, 91 L.Ed.2d 265 (1986). The "genuine issue" standard used for summary judgment is "very close" to the "reasonable jury" standard used for a directed verdict, with the primary difference being procedural. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." <u>Seabulk Offshore, Ltd. v. American Home Assur. Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004) (citing <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001)).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." <u>Liberty Lobby</u>, 477 U.S. at 255.

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Id. at 256.  Once the moving party has met its initial burden of proof, the non-moving party must then set forth specific facts sufficient to raise a genuine issue for trial.  Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Liberty Lobby, 447 U.S. at 247 (emphasis in original). A "plaintiff, to survive the defendant's motion [for summary judgment], need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial." Id. at 257.

The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any.  Celotex, 477 U.S. at 323.  In determining whether to grant summary judgment, the court's role does not include weighing the evidence or making findings of fact. Liberty Lobby, 447 U.S. at 249-50.  The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Id. at 251-52.

ANALYSIS

The defendant's motion for summary judgment is supported by the affidavit of Barbara A. McMurrey in which Ms. McMurrey states that she observed Mr. Bivins sign the change of beneficiary form. In resisting the defendant's motion, the plaintiff asserts that Mr. Bivins did not sign the change of beneficiary form or, if he did sign, he lacked the requisite mental capacity to change his beneficiary. However, the plaintiff did not support either of these assertions with evidence that was sufficient to raise an issue of fact. It follows, as discussed below, that the defendant's motion for summary judgment should be granted.

1. Issue regarding the signature

In North Carolina, authentication of an instrument may be accomplished by "any evidence tending to show the execution of the instrument." Piedmont Cattle Credit Co. v. Hall, 238 S.E.2d 625, 627 (N.C. App. 1977) (quoting Henrico Lumber Co. v. Dare Lumber Co., 117 S.E. 10, 11 (N.C. 1923)). It has long been the law in North Carolina that evidence from witnesses "[w]ho have seen the person write . . . is [the] most certain" form of authenticating a disputed handwriting. State v. Allen, 8 N.C. 6 (N.C. 1920). Additionally, courts in North Carolina "have consistently held expert testimony in the field of handwriting analysis to be admissible." Taylor v. Abernethy, 560 S.E.2d 233, 240 (N.C. App.

2002).[1]  The Fourth Circuit also has recognized that "handwriting comparison testimony has a long history of admissibility in the courts of this country," and that it satisfies the requirements of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  <u>U.S. v. Crisp</u>, 324 F.3d 261, 271 (4th Cir. 2003).

The defendant has provided an affidavit from Barbara McMurrey stating under oath that she witnessed Mr. Bivins sign the change form and then signed the form as a witness to his signature.  Defendant also has produced a sworn report by Jeffrey S. Taylor, a forensic document examiner, concluding that Mr. Bivins' signature on the change form is "probably" genuine.  Plaintiff has countered by producing a sworn report from Emily J. Will, also a document examiner, stating that no conclusion could be reached as to the authorship of the signature on the change form.  Both reports are based on an examination of a "multi-generational copy" (a copy of

---

[1] <u>See also</u>, <u>State v. LeDuc</u>, 291 S.E.2d 607, 611-12 (N.C. 1982) (noting NC courts have repeatedly allowed experts "to testify on the authenticity of a given handwritten document if he qualified because of his skill in handwriting analysis," and stating expert witness may "compare[ ] the handwriting on the contested document with a genuine standard. Based on this comparison he gives his opinion on the authenticity of the contested document"), overruled on other grounds, <u>State v. Childress</u>, 362 S.E.2d 263 (N.C. 1987); <u>State v. Horton</u>, 326 S.E.2d 54, 56 (N.C. App. 1985) (expert witness in handwriting analysis permitted to give opinion on validity of disputed document); <u>In re Ray</u>, 242 S.E.2d 194, 195 (N.C. App. 1978) (expert witness in field of handwriting analysis permitted to testify to observations concerning handwriting on contested will and exemplars of decedent's writing and to render opinion on the ultimate issue of whether deceased had written will).

a copy) of the change form, which admittedly limits a handwriting expert's ability to determine authenticity. Both parties agree that the original change form is not available from Genworth. Without access to the original document, the ability of the experts to express an opinion is limited to what is contained in their reports. While defendant's expert was able to opine that the signature probably was genuine, the plaintiff's expert was unable to go even that far and concluded, instead, that her examination of the copy of the form simply was inconclusive and precluded her from expressing an opinion regarding the authenticity of the signature on the change of beneficiary form. Such a statement does not dispute the eye-witness statement of Barbara McMurrey that Mr. Bivins signed the change form in her presence and hence does not create an issue of fact. Nor was the plaintiff able during her deposition to express an opinion regarding the genuineness of the signature on the change of beneficiary form. Plaintiff, therefore, has not established an issue of material fact to be resolved at trial with respect to the genuineness of Mr. Bivins' signature. It follows that the defendant is entitled to summary judgment on the genuineness issue.

    2. Issue regarding mental capacity

Plaintiff's second theory for invalidating the change of beneficiary is that Mr. Bivins lacked the capacity to contract at the time the change form was executed. In North Carolina, the

standard for determining competency and mental capacity to enter into a contract is as follows:

> [A] person has mental capacity sufficient to contract if he knows what he is about, and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

Barbee v. Johnson, 665 S.E.2d 92, 96 (N.C. App. 2008) (quoting Ridings v. Ridings, 286 S.E.2d 614, 616 (N.C. App. 1982) (citing Sprinkle v. Wellborn, 52 S.E. 666, 672 (N.C. 1905)).

"Although the mental capacity of the decedent to change the beneficiaries of his [insurance] plans must be determined as of the date of the execution of the forms effecting such change, evidence of the decedent's mental capacity at other times is admissible if it bears on the issue of the decedent's mental capacity at the time he executed the changes." Matthews v. James, 362 S.E.2d 594, 599-600 (N.C. App. 1987). Evidence of an attempt to commit suicide or the commission of suicide does not, alone, establish lack of mental capacity. Id. at 601. The party seeking to avoid a contract through an attack on mental capacity bears the burden of proof. Id. Additionally, the presumption in North Carolina is that a person is mentally normal, and "[e]veryone is presumed to be sane until the contrary appears." Id. (quoting Ridings v. Ridings, 286 S.E.2d 614, 616 (N.C. App. 1982).

Since the change of beneficiary form was executed on September 5, 2006, the controlling question is Mr. Bivins' mental capacity on that date. While the record reflects that Mr. Bivins suffered from depression and was being treated for that problem by a psychiatrist, it does not contain evidence from which a jury reasonably could conclude that he lacked the mental capacity to change the beneficiary of his life insurance on September 5, 2006. The evidence reflects that for several years prior to his death in March of 2007, Mr. Bivins had experienced episodes of depression that remitted and recurred. The only evidence of his condition specifically on September 5, 2006, is the sworn statement of Ms. McMurrey that Mr. Bivins was happy and upbeat when she witnessed his signature on that date. The controlling question is not whether Mr. Bivins suffered from depression, but whether on September 5, 2006, he had the ability to understand that he was signing a change of beneficiary form that would change who would be entitled to receive the proceeds of his life insurance. The record contains evidence that Mr. Bivins was depressed and prone to erratic behavior at times during the three years prior to his death, that he did not always take the medication that was prescribed and that he sometimes experienced suicidal ideations and ultimately committed suicide on March 14, 2007. However, there is no credible evidence that these problems deprived Mr. Bivins of the capacity to understand that on September 5, 2006, he was executing

an insurance change of beneficiary form that would change the beneficiary of his insurance.  To the contrary, the undisputed evidence from his doctor indicates the opposite.  According to the doctor, he treated Mr. Bivins on August 7, 2006, approximately one month before the change form was executed.  On that occasion, his assessment of Mr. Bivins was that, although Mr. Bivins had a major depressive disorder, Mr. Bivins' thinking was goal-directed, logical and clear, and there were no obsessions, compulsions, phobias or grandiosity, and his judgment was in tact.  Mr. Bivins was seen by the doctor again on October 2, 2006, less than one month after the execution of the change form.  The doctor's assessment on that occasion was similar to his earlier evaluation. He found that although suffering from depression, Mr. Bivins' thought process and content were normal and that his judgment was in tact.  The doctor further testified in his deposition that there was never a time when he even suspected that Mr. Bivins did not know who his family was or that he did not appreciate what property he owned.  There was no testimony from the doctor that depression, anxiety, suicidal ideations or any other condition observed by the doctor rendered Mr. Bivins mentally incompetent or that Mr. Bivins had any condition that rendered him unable to understand what he was doing when he signed the change form.  From the plaintiff's perspective, the problem with the evidence as a whole regarding Mr. Bivins' mental health is that it does not include evidence from

which a jury could reasonably conclude that the depression and related problems had the effect of depriving Mr. Bivins of the mental capacity to change the beneficiary of his life insurance when he signed the change form on September 5, 2006. No such opinion was expressed by the doctor who was treating Mr. Bivins and it would be conjecture to say that such causation occurred. The evidence thus does not raise an issue of material fact to rebut the presumption that Mr. Bivins was competent at the time he executed the change form. What is required is evidence that Mr. Bivins did not have the ability to understand his actions, their scope, and their effect at the time the change form was executed. Plaintiff's evidence was insufficient to support such a finding. The defendant therefore is entitled to summary judgment on the competency issue, as well.

## CONCLUSION

In accordance with the foregoing analysis, defendant's motion for summary judgment shall be granted. In accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure, a separate judgment granting the motion and adjudging that the defendant is entitled to the proceeds from the Policy shall be entered contemporaneously with the filing of this memorandum opinion.

This 26th day of November, 2008.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

- 11 -

PARTIES IN INTEREST

Arlene M. Reardon, Esq.
P.O. Drawer 2086
High Point, NC 27261-2086

Anna Cotten Wright, Esq.
101 N. Tryon Street, Suite 1240
Charlotte, NC 28246